IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-00374-PAB-MJW

G.W., by his mother and legal guardian, J.W., in her own right,

    Plaintiffs,

v.

BOULDER VALLEY SCHOOL DISTRICT,
BRUCE MESSINGER,
DEIDRE PILCH,
MELISSA BARBER,
RON YAUCHZEE,
SCOTT SPARKS,
JERRY ANDERSON,
JEFFERSON COUNTY SCHOOL DISTRICT R-1,
POLLY ORTIZ LUTZ,
BECKY DANCER, and
DAVID KOLAR,

    Defendants.

_____

# ORDER
_____

This matter is before the Court on plaintiffs' Motion for Stay-Put and Motion for Temporary Restraining Order [Docket No. 15].[1] Plaintiffs G.W. and his mother, J.W., request an order requiring that G.W. remain in his current educational placement — defined by his most recently implemented individualized education plan ("IEP") — for

---

[1] Although the title of plaintiffs' motion indicates that they seek two different forms of relief — a "stay-put" order and a temporary restraining order — plaintiffs' motion does not identify any injunctive relief sought beyond the "stay-put" order. *See generally* Docket No. 15. Accordingly, the Court analyzes this motion under the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), and does not discuss the factors otherwise associated with motions that seek injunctive relief.

the duration of this lawsuit. Docket No. 15 at 1.[2] In light of plaintiffs' pro se status, the Court construes their filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

## I. BACKGROUND[3]

G.W. is a 19-year-old male who suffers from traumatic brain injury ("TBI"). *See* Docket No. 1 at 9. As of the time this lawsuit was filed, G.W. resides in Boulder, Colorado and receives services of some type at the Wheat Ridge Regional Center located in the Jefferson County School District ("JCSD"). *Id.* at 8. It is not clear from the motion what Wheat Ridge Regional Center is.

From January 2014 to June 2014, the Boulder Valley School District ("BVSD") assigned G.W., with J.W.'s consent, to a residential placement at Lakeview NeuroRehab School in Effingham, New Hampshire ("Lakeview"). *Id.* at 10, ¶ 55. At some point, J.W. learned that Lakeview was "unsafe" and informed officials with BVSD that G.W. would be returning home to Boulder in June 2014. *Id.* ¶ 56. In July 2014, an IEP meeting[4] was held with defendant Scott Sparks, a BVSD official, and officials from Lakeview. Docket No. 1 at 11, ¶ 57. Mr. Sparks informed G.W.'s IEP team that

---

[2]The Court has determined that neither oral argument nor an evidentiary hearing would assist the Court in ruling on this matter.

[3]The Court recites only those facts necessary to resolve the instant motion.

[4]Pursuant to the IDEA, a child's IEP team, as defined in 20 U.S.C. § 1414(d)(1)(B), is required to review a child's IEP "periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved" and to make appropriate revisions to the IEP. 20 U.S.C. § 1414(d)(4)(A)(i)-(ii). Although the IDEA does not define the term "IEP meeting," the statute uses that term to refer to these required periodic IEP reviews. *E.g.*, 20 U.S.C. § 1414(d)(3)(D)("In making changes to a child's IEP after the annual IEP meeting for a school year . . . ").

Lakeview was the only location that could provide G.W. with a Free Appropriate Public Education ("FAPE"). *Id.* In October 2014, J.W. told BVSD that Lakeview had been deemed unsafe by the governor of New Hampshire after the death of a resident. *Id.* ¶ 59. Subsequently, BVSD offered to place G.W. at the Ivy School in Boston, Massachusetts, which J.W. declined due to published safety violations by the Ivy School. *Id.* ¶ 60.

On or about April 28, 2015, G.W. started receiving services at Wheat Ridge Regional Center, located in Jefferson County. Docket No. 1 at 11, ¶ 1.[5] On May 6, 2015, G.W. attended a meeting at his neighborhood school, Arvada High School. *Id.* at 11-12, ¶ 2. The meeting included the principal, a school counselor, a regional center staff, and several special education staff. *Id.* J.W., who participated by phone, provided the meeting attendees with G.W.'s most current IEP, dated July 2014 to July 31, 2015. *Id.* at 11-12, ¶¶ 2, 4. JCSD officials proposed, since May was close to the end of the school year, that G.W. wait until the summer or following school year to "receive his entitled services." *Id.* ¶ 5. J.W. objected to JCSD's suggestion and plaintiffs allege that JCSD "refused to implement G.W.'s IEP, in violation of IDEA." *Id.* ¶ 6.

On or around May 28, 2015, defendant Becky Dancer, JCSD's Special Education Department director,[6] told J.W. that she believed G.W.'s needs were too severe to be served in JCSD. Docket No. 1 at 12, ¶ 8. After a meeting with Dr. Reine

---

[5]Plaintiffs repeat their paragraph numbers at the beginning of certain sections of the complaint. For simplicity's sake, the Court adopts plaintiffs' paragraph numbering.

[6]Docket No. 1 at 5, ¶ 15.

Evereteze of Wheat Ridge Regional Center to discuss G.W., Ms. Dancer subsequently identified G.W.'s needs as moderate. *Id.* Since G.W. had not been enrolled in school since J.W. removed him from Lakeview, J.W. authorized JCSD to evaluate G.W.'s educational needs. *Id.* ¶ 10. Ms. Dancer informed J.W. that the evaluations could be conducted while G.W. was receiving extended school year ("ESY") services. *Id.* G.W. was not provided ESY services, however. *Id.* ¶ 11. G.W.'s IEP terminated effective July 31, 2015 and JCSD refused to allow G.W. to attend school and to receive the services outlined in the IEP. *Id.* ¶ 12. After G.W.'s IEP terminated, JCSD did not conduct an annual IEP meeting to review, revise, or modify it. *Id.* ¶ 13.

In July 2015, J.W. filed a due process complaint against BVSD with the Colorado Office of Administrative Courts seeking an order requiring BVSD to provide G.W. with a FAPE in the state of Colorado. Docket No. 1 at 7, ¶ 31; *see also* Docket No. 30-1. The Administrative Law Judge ("ALJ") ruled in BVSD's favor in an order dated November 17, 2015. Docket No. 30-1 at 12. J.W.'s "fundamental complaint," as characterized by the ALJ, was that BVSD denied G.W. a FAPE by only offering placement in Lakeview or the Ivy School. *Id.* at 11.[7] The ALJ found that it was undisputed that a FAPE was provided and held that the record supported BVSD's determination that only Lakeview or the Ivy School was appropriate. *Id.* The ALJ further found that, while J.W. wished for G.W. to be placed in "some school like Lakeview in Colorado[,]" the "evidence fail[ed] to establish that such a school exists." *Id.*

---

[7] The ALJ refers to the "Ivy Street School," while the complaint refers to the "Ivy School." *Compare* Docket No. 30-1 at 11, *with* Docket No. 1 at 11, ¶ 60.

## II. ANALYSIS

"The IDEA provides federal funds to the states for the education of children with disabilities, guaranteeing disabled children between the ages of three and twenty-one access to a [FAPE]." *Erickson v. Albuquerque Pub. Schs.*, 199 F.3d 1116, 1118 (10th Cir. 1999) (citation omitted). The IDEA includes a so-called "stay-put" provision that functions as an automatic statutory injunction authorizing the Court to "requir[e] that the child's then-current educational placement be maintained at the expense of whatever public entity issued the IEP that is being challenged" for the duration of litigation. *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1252 n.13 (10th Cir. 2009) (citation and quotation omitted). The "stay-put" provision states:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j). "The relevant inquiry under [the stay-put provision]" is "the identification of the then current educational placement." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864-65 (3d Cir. 1996). The Tenth Circuit has recognized that a student's current educational placement can be determined by examining the "IEP in place when the stay-put provision is invoked" and any other facts relevant to a student's current educational placement. *Erickson*, 199 F.3d 1116, 1121 (10th Cir. 1999). "Courts have generally interpreted the phrase ['current educational placement'] to mean

the placement set forth in the child's last-implemented IEP." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 902 (9th Cir. 2008) (citations omitted).

Here, it is unclear what relief G.W. and J.W. request or what relief the Court has the authority to order. As JCSD argues, "[t]here is no current educational placement," as G.W. does not appear to have been school since J.W. removed him from Lakeview in 2014. Docket No. 30 at 6. Moreover, though J.W. appears to seek implementation of the (now-expired) IEP dated July 31, 2014 in a school in Colorado, *see* Docket No. 15 at 3-4, it is not clear from the record that the July 31, 2014 IEP was ever implemented. It appears, instead, that the last "implemented" IEP to which J.W. agreed called for G.W.'s placement in Lakeview, *see* Docket No. 1 at 10, ¶ 55,[8] and that Lakeview, therefore, is the "placement set forth in [G.W.'s] last-implemented IEP." *L.M.*, 556 F.3d at 902. To the extent that J.W. seeks a court order implementing the terms of that IEP at a school located in Colorado, the ALJ found that no such school exists and J.W. does not identify such a school in her motion. To the extent that J.W. seeks to enforce the terms of G.W.'s most recently implemented IEP, it appears that defendants have offered precisely that accommodation, Docket No. 15 at 4, and that J.W. continues to refuse it. Accordingly, the Court finds that plaintiffs have failed to justify issuance of a stay-put order.

## III. CONCLUSION

For the foregoing reasons, it is

---

[8] No party attaches any IEP that pre-dates the IEP dated July 31, 2014.

**ORDERED** that the Motion for Stay-Put and Motion for Temporary Restraining Order [Docket No. 15] is **DENIED**.

DATED March 18, 2016.

                              BY THE COURT:

                              s/Philip A. Brimmer
                              PHILIP A. BRIMMER
                              United States District Judge